467 So.2d 462 (1985)
Joseph HAYWARD, Appellant,
v.
STATE of Florida, Appellee.
Nos. 84-748 to 84-750.
District Court of Appeal of Florida, Second District.
April 17, 1985.
*463 James Marion Moorman, Public Defender, Bartow, and Douglas S. Conner, Asst. Public Defender, Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Frank Migliore, Jr., Asst. Atty. Gen., Tampa, for appellee.
FRANK, Judge.
The appellant urges six points in attacking the trial court's revocation of probation and the imposition of sentences in excess of the guidelines' recommended range. We reject four of the appellant's issues on appeal, comment as follows upon the remaining two, and affirm the sentences.
The appellant engaged in illicit drug activity during the period of his probation and prior to October 1, 1983, the guidelines' effective date. He now claims that he was sentenced under the guidelines without a sufficient showing that he affirmatively elected to be sentenced in that manner. The record belies the assertion. At sentencing, the trial court asked the appellant if he wished to be sentenced under the guidelines and his counsel replied "yes." The court announced that it would not follow the guidelines. Thus, the appellant was adjudicated guilty of the offenses underlying his probationary status and sentenced to four consecutive five year terms. The appellant's counsel's response binds the appellant. Newsome v. State, 466 So.2d 411 (Fla. 2d DCA 1985); Moore v. *464 State, 455 So.2d 535 (Fla. 1st DCA 1984). And, the violation of probation constitutes a "clear and convincing" reason for departure from the presumptive sentence in order to enhance the penalty. Randolph v. State, 458 So.2d 64 (Fla. 1st DCA 1984).
We do not subscribe to the view urged by the appellant that the process associated with the affirmative selection of a guidelines sentence, occurring against the backdrop of a crime committed prior to October 1, 1983, requires record disclosure that the trial court determined the selection to have been knowingly and intelligently reached. We do not question that the abandonment of potential parole may affect a prisoner's ultimate moment of freedom. But a defendant's loss of parole stemming from the selection of a guidelines sentence and the trial court's subsequent departure permitted under Rule 3.701(d)(11), are matters to be considered and evaluated by the defendant and his or her counsel. We find no basis upon which to convert the defense attorney's task of counseling the criminally charged defendant into a judicial responsibility. The element of a strategic choice between sentencing options and the resultant consequences requires no greater degree of trial court scrutiny, apart from the exception referred to below, than would any other aspect of a criminal proceeding demanding the formation of tactical judgments which best serve a defendant's interests.
Moreover, we have serious difficulty in attempting to place the affirmative selection of a guidelines sentence in the same cubicle with the entry of a plea of guilty or nolo contendere. The need for judicial certainty as a prelude to receiving either of those pleas derives not merely from the penalty facing a criminal defendant, but more significantly from the deprivation through abandonment of constitutionally essential procedural rights. It is for that reason that Rule 3.170(i) and (j) of the Florida Rules of Criminal Procedure requires our trial courts to be assured that guilty and nolo pleas are the product of informed and intelligent judgments. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We attach no comparable constitutional compulsion, however, to a trial court's acceptance of a defendant's affirmative selection of a guidelines sentence. Although departure from a presumptive sentence in the context of a crime committed prior to October 1, 1983 does disadvantage the defendant through loss of the parole privilege, that loss is not occasioned by an independent act of the state which alone exposes the defendant to an otherwise impermissible ex post facto law. Cf. Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); State v. Green, 421 So.2d 508 (Fla. 1982).
Finally, the appellant has launched a broadside assault upon the guidelines claiming that Article X, Section 9 of the Florida Constitution is offended when applied to a defendant, such as the appellant, whose criminal behavior took place prior to October 1, 1983. Article X, Section 9 provides that:
Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed.
The appellant attributes to Article X, Section 9 an absolute prohibition against legislative and judicial action having the effect of altering a pre-existing penalty notwithstanding, as in this case, the affirmative selection of a guidelines' sentence. We disagree.
The defect in the appellant's Article X, Section 9 contention originates in a misperception of the purpose of that provision. In contrast to the expanded view he accords Article X, Section 9, it is well settled that that aspect of the Constitution is confined to "... saving pending criminal prosecutions from the repeal of the underlying statute." United States v. United States Coin and Currency, 401 U.S. 715, 738, 91 S.Ct. 1041, 1052, 28 L.Ed.2d 434 (1971) (White, J., dissenting); Raines v. State, 42 Fla. 141, 28 So. 57 (1900). Contrary to the appellant's claim, Article X, Section 9 does *465 not render section 921.001(4)(a), Florida Statutes (1983), and, hence, the sentencing guidelines, facially unconstitutional.
Affirmed.
CAMPBELL, A.C.J., and LEHAN, J., concur.